Steven DeMARCO

v.

Lowell D. HEWITT, Warden Glen R. Jeffes, Warden Julius Cuyler, Warden Gerard T. Frey, James F. Howard.

Civ. A. No. 78–2356.

United States District Court, E. D. Pennsylvania.

Nov. 5, 1979.

Edith G. Laver, Philadelphia, Pa., for plaintiff.

Margaret E. Anderson, Asst. Atty. Gen., Philadelphia, Pa., for all defendants except Frey.

Robert G. Hanna, Jr., Philadelphia, Pa., for Frey.

## MEMORANDUM

BECHTLE, District Judge.

Presently before the Court are: (1) the motion of plaintiff Steven M. DeMarco ("DeMarco") for summary judgment; (2) the motion of defendant Gerard T. Frey ("Frey") for summary judgment; and, (3) the motion of defendants Lowell D. Hewitt, Julius Cuyler, Glen R. Jeffes and James F. Howard for summary judgment. For the reasons stated below, the motion of plaintiff will be denied and the motions of the defendants will be granted.

The Court is presented with cross-motions for summary judgment in this § 1983 action brought by a convicted prisoner in the custody of the Commonwealth of Pennsylvania. The parties have collaborated and developed a joint stipulation of facts which has been made a part of the record of this case. The Court finds that the instant dis-

pute is ripe for adjudication; that there is no genuine dispute as to any material fact; and, that the defendants are entitled to a judgment in their favor as a matter of law.

The stipulated facts are as follows: On March 19, 1976, DeMarco was sentenced on a parole violation charge to confinement at the Delaware County Prison, such sentence to run from that date until February 14, 1978. Stipulation at ¶ 3. On May 13, 1976, defendant Frey, the Superintendent of the prison, initiated the transfer of DeMarco pursuant to the Pennsylvania Prison Transfer Act, 61 Pa.C.S.A. § 72. *Id.* at ¶ 4. The stated ground for the transfer from the county prison to the state prison system was that DeMarco was a "security risk." *Id.* at ¶ 8. *See also* Petition for Transfer, Attachment "A" to the Stipulation. There is no allegation that the transfer was punitive or disciplinary.[1] On May 14, 1976, the petition for transfer was approved by the Deputy Commissioner for Treatment of the Bureau of Corrections, as mandated by the Prison Transfer Act. Stipulation at ¶ 11. On the same day, the petition was approved by Judge Francis J. Catania of the Court of Common Pleas of Delaware County, as mandated by the Prison Transfer Act. *Id.* at ¶ 12. DeMarco was not given any prior notice of the transfer and he was not provided with a pre-transfer hearing. *Id.* at ¶ 7. However, the Prison Transfer Act does not require a hearing or provide for notice and there is no allegation that the provisions of the Act were not followed. DeMarco was transferred to the State Correctional Institution at Huntington on June 3, 1976. *Id.* at ¶¶ 11, 13.

Upon his arrival at the Huntington institution, DeMarco was housed in solitary confinement for two days, pending his classification at the Diagnostic and Classification Center at Huntington. *Id.* at ¶ 26. He was thereafter confined to the classification facility for approximately five weeks. *Id.* at ¶ 28. Confinement at the center is substantially more restrictive than confinement in general population status. *Id.* at ¶ 29.

Subsequently, DeMarco was transferred to the Diagnostic and Classification Center at the Dallas Correctional Institution. *Id.* at ¶ 35. DeMarco was transported to Dallas in a Bureau of Corrections van. *Id.* at ¶ 38. However, on his way to Dallas, he was detained at the State Correctional Institution at Graterford in order to make a connection with a different van. *Id.* at ¶ 39. While at Graterford, DeMarco was confined to a restricted cellblock and was not given general population status. *Id.* at ¶ 41. However, this confinement lasted only for a period of 24 to 48 hours. *Id.* at ¶ 42.

Upon his arrival at the Dallas facility, DeMarco was placed in the Diagnostic and Classification Center and, following the completion of the classification process, was transferred to the State Correctional Institution at Pittsburgh. *Id.* at ¶ 46. Upon his arrival at the Pittsburgh facility, he was housed in a restricted-housing area for two days, after which he was given a regular cell assignment. *Id.* at ¶¶ 53, 54. There is no allegation that this series of transfers among the state institutions was punitive or disciplinary. In addition, it is stipulated that the placement and classification of the plaintiff was a matter of policy at the respective institutions. *Id.* at ¶¶ 32, 43, 49 and 54.

On July 13, 1978, DeMarco filed a 20-page *pro se* complaint under 42 U.S.C. § 1983, invoking this Court's jurisdiction under 28 U.S.C. § 1343. He named as defendants Gerard T. Frey, Superintendent of Delaware County Prison; Lowell D. Hewitt, Superintendent of the Dallas facility; Julius Cuyler, Superintendent at Graterford; Glen R. Jeffes, Superintendent at Dallas; and, James F. Howard, Superintendent at Pittsburgh. Although DeMarco makes numerous claims for relief and seems to rely on many varied theories for recovery, with the

---

1. The parties have stipulated that the grounds for the transfer were as follows:

   1. Investigation of drug activity within the institution leading the formal charges on May 10, 1976.

2. Other ongoing investigation.
3. Participation in a riot and fire disturbance.

aid of a memorandum prepared by appointed counsel, the Court has determined that DeMarco makes two claims. First, he asserts that he was deprived of certain procedural due process rights when he was initially transferred from the Delaware County Prison to the state institutions, pursuant to the Prison Transfer Act. Second, he contends that he was deprived of certain procedural due process rights prior to his confinement in the classification centers and other restricted-housing areas upon his arrival at Huntington, Graterford, Dallas and Pittsburgh.[2]

### A. The Initial Transfer

■■ A prisoner has no vested right to be incarcerated in a particular penal institution, absent a justifiable and reasonable expectation of so remaining at the institution, created by an applicable state statute. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Stated in another fashion, a prisoner is entitled to certain due process protections before he can be transferred only if the applicable state law creates a justifiable expectation

of remaining in a particular facility. *Lair v. Fauver*, 595 F.2d 911, 913 (3d Cir. 1979). DeMarco contends that the Pennsylvania Prison Transfer Act creates in him the expectation that he will remain in the county prison and that, therefore, he can only be transferred upon prior notice and after an opportunity for a hearing. The Court does not agree.

The Prison Transfer Act provides the statutory authority for transfers from county prisons to state prisons when the need arises. Specifically, the Act provides that county officials may petition the transfer of county prisoners to state facilities if such county officials "cannot, by reason of overcrowded condition or other existing conditions, furnish proper and sufficient accommodations for the care, custody, control and safety of the inmates . . . ." 61 Pa.C.S.A. § 72.[3] This statute is to be distinguished from others which courts have found to create an expectation of remaining in a particular work, study or treatment program.

In *Lair v. Fauver, supra*, the Third Circuit Court of Appeals held that a convicted

---

2. *See* Plaintiff's Brief in Support of Motion for Summary Judgment and in Opposition to Defendants' Motions for Summary Judgment, at p. 3, for a statement of questions presented to the Court by DeMarco's counsel.

3. 61 Pa.C.S.A. § 72 states:

The Deputy Commissioner for Treatment of the Bureau of Correction in the Department of Justice is hereby authorized and empowered and, upon petition being presented to him by the board of inspectors, if there be such board, otherwise the superintendent or official in charge of any penitentiary, prison, workhouse, house of correction, or other institution for adult prisoners, located within any county, setting forth that the said penitentiary, prison, workhouse, house of correction, or other institution for adult prisoners, *cannot, by reason of overcrowded condition or other existing conditions, furnish proper and sufficient accommodations for the care, custody, control, and safety of the inmates thereof, and that it is requested that a certain number of inmates, set forth in such petition, should be transferred therefrom, may make an order authorizing and directing the said board of inspectors, if there be such board, otherwise the superintendent or official in charge, to transfer to another prison, penitentiary, workhouse, house of correction, or oth-*

*er institution for adult prisoners*, such person or persons whom the board of inspectors, if there be such board, otherwise the superintendent or official in charge, shall specify and designate: Provided, however, That before any transfer is made as aforesaid, the court of quarter sessions of the county wherein any such penitentiary, prison, workhouse, house of correction, or any other institution for adult prisoners is located, shall give its consent to such transfer. In the event of the overcrowded condition or other existing condition of such penitentiary, prison, workhouse, house of correction, or other institution for adult prisoners, be remedied, so that it shall again be able to furnish proper and sufficient accommodations for the care, custody, control, and safety of inmates thereof, the Deputy Commissioner is hereby authorized and empowered, upon petition being presented to him by the said board of inspectors, if there be such board, or by the superintendent or other official in charge, to retransfer to said penitentiary, prison, workhouse, house of correction, or other institution for adult prisoners, any or all inmates heretofore transferred under the terms of this act. (Emphasis added.)

offender _may_ have a justifiable expectation of remaining at a diagnostic treatment center at which psychiatric services were provided. _Id._ at 914. Similarly, in _Perrote v. Percy_, 444 F.Supp. 1288 (E.D.Wis.1978), the court held that a prisoner did have certain expectations of remaining in a work/study release program. _Id._ at 1290. The court noted that the statute expressly provided that a prisoner could be denied participation "[i]f [he] violates the conditions prescribed by the institution . . . ." _Id._ at 1289, _quoting_ Wis.Stat. § 56.065(2). Thus, a prisoner could expect to remain in the program unless he violated the single stated condition.

The Prison Transfer Act is very different. Rather than provide for a benefit to the prisoner which is forfeited only upon the occurrence of a violation, the Act simply provides for the alleviation of a dangerous or unhealthy condition at the county institution. Although a prisoner may have an expectation of remaining in a treatment program, it is absurd to state that a prisoner in a county prison has a vested expectation of remaining in an overcrowded, unhealthy or unsafe facility.

DeMarco argues that the Prison Transfer Act imposes substantial and significant limitations on the exercise of discretion by county officials. The Court disagrees. The language of the statute is silent as to limitations on the discretion to seek a transfer of a prisoner. The decision to transfer a prisoner for health and safety reasons must be based on an analysis of many varied factors and such an analysis necessarily involves special expertise in the field of corrections. Accordingly, it has been stated that the "discretion granted to [county officials under the Transfer Act] is not significantly limited or restricted by any ascertainable standards or guidelines." _Cobb v. Aytch_, 539 F.2d 297, 300 (3d Cir. 1976). Accordingly, the Court holds that DeMarco was not entitled to a hearing prior to his transfer because he had no reasonable expectation of remaining at the Delaware County Prison. _Cobb v. Aytch_, 472 F.Supp. 908, 923 (E.D.Pa.1979).

### B. _Temporary Restrictive Confinement_

DeMarco argues that he was entitled to certain forms of due process prior to his restrictive temporary confinement at the correctional institutions at Huntington, Graterford, Dallas and Pittsburgh. However, there is no allegation that these temporary administrative confinements are punitive in nature. Additionally, there is no allegation that such confinement was an infliction of cruel and unusual punishment. DeMarco's claim regarding his non-punitive confinement in restrictive areas must fail because, as the Supreme Court said in _Meachum v. Fano_:

> . . . Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

_Id._, 427 U.S. at 225, 96 S.Ct. at 2538. Accordingly, the motions of the defendants for summary judgment will be granted and the motion of DeMarco will be denied. An appropriate Order will be entered.